## STATE EX REL. NORMAN HALVERSON v. JACK G. YOUNG.

154 N. W. (2d) 699.

December 1, 1967—No. 40,631.

C. *Paul Jones,* State Public Defender, and *Robert E. Oliphant,* for appellant.

*Douglas M. Head,* Attorney General, *Gerard W. Snell,* Acting Solicitor General, and *David C. Weinberg,* Special Assistant Attorney General, for respondent, superintendent of State Reformatory for Men.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying a petition for a writ of habeas corpus by defendant, who is now serving a sentence for the crime of burglary. When sentence was originally imposed, the court granted probation on condition that defendant take up residence and employment in the State of Nevada and not return to the State of Minnesota. A few months later, defendant returned to Minnesota, whereupon his probation was revoked. He contends that the court erred in revoking his probation on that ground. Both parties seem to agree that the issue thus presented calls for a decision by this court as to whether or not banishment from the State of Minnesota is a valid condition for probation.

It appears from the record before us that on September 7, 1965, defendant entered a plea of guilty in Ramsey County District Court to the charge of burglary in violation of Minn. St. 609.58, subd. 2(1)(a). Preliminary to sentence, defendant informed the court that he had been offered employment with a company in Nevada and that if probation were granted he would leave the next day for that state. At that time defendant was 22 years of age, was married with an 8-month-old child, had one prior conviction, and felt that his difficulties in Minnesota grew out of bad associations. In considering the proposal, the trial court interrogated the defendant:

"THE COURT: Are you prepared to tell me here in open court before witnesses, and something that's going to go on the record, that you are willing to leave Minnesota and never come back here?

"THE DEFENDANT: Yes, sir.

"THE COURT: Are you convinced that you can talk your wife into going down there with you; that you can convince her that you can make a decent life for her in a strange place?

"THE DEFENDANT: She is all for going, your Honor.

"THE COURT: Because you certainly haven't done too good a job up here, have you?

"THE DEFENDANT: No, I haven't.

"THE COURT: I have no desire, you know, to take people who might be undesirable in the State of Minnesota and merely move them someplace else because this isn't the purpose of what we're trying to do. What I want to know, Mr. Halverson * * * if you are allowed your freedom * * * and are not going to be incarcerated, [are you] going to be able to stay out of trouble?

"THE DEFENDANT: Yes, sir. I did that when I was out West. Seems like every time I get in Minnesota I get in trouble."

The court thereupon imposed an indeterminate sentence from 0 to 20 years and granted defendant "a suspension of this sentence imposed by the Court on the condition that you leave the State of Minnesota no later than 6:00 o'clock p. m. tomorrow, the 8th day of September, 1965, to take up residence and employment, as you have stated to the Court, in the State of Nevada, and conditioned on the fact that you remain out of the State of Minnesota and conduct yourself as a law-abiding citizen."

From the record it next appears that on February 18, 1966, an order was made setting a hearing for revocation of probation pursuant to § 609.14. The order was based upon an affidavit of the assistant county attorney to the effect that defendant had been named as an accomplice in a burglary and had been in custody of police authorities in Hudson, Wisconsin; that extradition proceedings were undertaken, as a result of which defendant had been brought to Washington County where a burglary charge was pending against him. It was also represented that defendant had violated the conditions of his probation by returning to the State of Minnesota. At the hearing, the trial court heard evidence with relation to the alleged breach of conditions of his parole. From the

record it appears that on January 12, 1966, the police in Hudson, Wisconsin, received a radio message to watch for a red Mustang automobile crossing the interstate bridge from Minnesota into Wisconsin. The car was thought to have been involved in a burglary in Minnesota. Eight minutes later a red Mustang, driven by defendant, crossed the bridge at Hudson, at which time defendant was arrested. There is nothing in the record to indicate one way or the other as to what defendant's involvement with the reported burglary may have been. Nor is there anything in the record to indicate the disposition of the criminal charge made against defendant in Washington County. It does not appear that the circumstances surrounding his arrest in Wisconsin and return to Minnesota were considered as wrongful conduct which would warrant revocation. The inquiry at the hearing was primarily directed to evidence bearing upon whether defendant violated the terms of his probation by returning to the State of Minnesota. At the hearing, defendant stated:

"THE DEFENDANT:   Well, all I have to say is, your Honor, I never, I don't deny that I was in the State of Minnesota but twice. I was in the state twice because I had to travel through the state; it was necessary for me to travel through the state. And the total hours that I was in the state of Minnesota couldn't be more than forty hours. I can't see where I could get twenty years for just—I had no intentions of staying back in the state. My wife had to come back to the state because her child was sick and she was near the hospital here, and my intentions were not to stay in the State of Minnesota. I just came back to see her again.

"THE COURT:   It's a little late, Mr. Halverson."

In support of his contention that probation was illegally revoked, the public defender argues that the condition requiring defendant to remain out of the state constitutes the unlawful punishment of banishment, and since that condition was void, the court could not revoke probation because of an alleged violation of it. Without taking a strongly opposing position, the attorney general states that the banishment issue is one of first impression in Minnesota and one of great significance. He insists,

however, that if this court decides that the condition is illegal, the original sentence must be imposed upon defendant.

■ It is obvious that the trial court, in granting probation, sought to give defendant an opportunity to reform by permitting him to take employment in another state where correctional and rehabilitation opportunities might be more favorable. We must hold, however, that there was no authority to impose, as a condition of the stay, that defendant "remain out of the State of Minnesota." We are in accord with the great weight of American decisional law which holds that it is beyond the power of a court to impose banishment as a condition of probation. The imposition of such a condition is a void and separable part of the judgment of conviction.[1] The condition is unauthorized by statute, is contrary to public policy, and is repugnant to the underlying policy of the probation law, which is to rehabilitate offenders without compromising the public safety. 50 Minn. L. Rev. 1146; 45 Minn. L. Rev. 814.

■ Had the stay been granted pursuant to Minn. St. 243.16, the Uniform Act for Out-of-State Parolee Supervision, there could be no objection. It provides:

"The governor is hereby authorized and empowered to enter into compacts and agreements with other states, through their duly constituted authorities, in reference to reciprocal supervision of persons on parole or probation and for the reciprocal return of such persons to the contracting states for violation of the terms of their parole or probation, and for the purpose of carrying out the provisions of this section the chairman of the state adult corrections commission is designated the official administrator of the interstate compact for the state of Minnesota."

This statute, which has also been adopted by the State of Nevada, comprehends the continued interest of the state in one who has been convicted of a crime and placed on probation. State ex rel. Morris v.

---

[1] 21 Am. Jur. (2d) Criminal Law, § 565; People v. Baum, 251 Mich. 187, 231 N. W. 95, 70 A. L. R. 98; In re Scarborough, 76 Cal. App. (2d) 648, 173 P. (2d) 825; People v. Blakeman, 170 Cal. App. (2d) 596, 339 P. (2d) 202; Bird v. State, 231 Md. 432, 190 A. (2d) 804.

Tahash, 262 Minn. 562, 115 N. W. (2d) 676. We must accordingly hold that even though the objectionable condition was imposed with the best of motives it is void nevertheless because it failed to provide for continued supervision as comprehended by the foregoing statute and the policy of the law which permits courts to exercise probationary power.

■ Moreover, it seems to us that 'the propriety of the revocation of probation must be measured against the provisions of § 609.14.[2] This statute requires that defendant probationer be given an opportunity 'to show that the asserted grounds for revocation do not exist and that he "be given a chance to tell the court his disagreement with these charges and to offer proof that they are unfounded." [3] Regardless of what we may have said in prior decisions of this court (State v. Chandler, 158 Minn. 447, 197 N. W. 847; State ex rel. Jenks v. Municipal Court, 197 Minn. 141, 266 N. W. 433; Guy v. Utecht, 216 Minn. 255, 12 N. W. [2d] 753; State ex rel. Morris v. Tahash, *supra*; and Breeding v. Swenson, 241 Minn. 232, 62 N. W. [2d] 488, certiorari denied, 347 U. S.

---

[2] Minn. St. 609.14 provides: "Subdivision 1. When it appears that the defendant has violated any of the conditions of his probation or has otherwise been guilty of misconduct which warrants the imposing or execution of sentence, the court may without notice revoke the stay thereof and probation and direct that the defendant be taken into immediate custody.

"Subd. 2. The defendant shall thereupon be notified in writing and in such manner as the court directs of the grounds alleged to exist for revocation of the stay of imposition or execution of sentence. If such grounds are brought in issue by the defendant, a summary hearing shall be held thereon at which he is entitled to be heard and to be represented by counsel.

"Subd. 3. If any of such grounds are found to exist the court may:

"(1) If imposition of sentence was previously stayed, again stay sentence or impose sentence and stay the execution thereof, and in either event place the defendant on probation pursuant to section 609.135, or impose sentence and order execution thereof; or

"(2) If sentence was previously imposed and execution thereof stayed, continue such stay and place the defendant on probation in accordance with the provisions of section 609.135, or order execution of the sentence previously imposed.

"Subd. 4. If none of such grounds are found to exist, the defendant shall be restored to his liberty under the previous order of the court."

[3] Advisory Committee Comment, 40 M. S. A. p. 139.

941, 74 S. Ct. 645, 98 L. ed. 1090), it is now clear that under the provisions of § 609.14 the probationer is entitled to a hearing on charges constituting a violation of the terms of probation. Since we hold that the condition requiring defendant to remain out of the State of Minnesota was void and probation could not be revoked on the asserted violation of that condition, it becomes necessary to review the proceedings to determine if other valid grounds for revocation existed. The affidavit supporting the motion for revocation does suggest additional grounds with reference to defendant's criminal conduct and association with law violators after his return to Minnesota. The evidence in the record at the hearing with reference to such additional grounds, however, is vague and inconclusive. Moreover, it is clear from the record that both the county attorney and the court were satisfied that defendant's return to the State of Minnesota was by itself a sufficient ground for revocation and evidence with reference to other alleged unlawful conduct was not developed. Such other grounds for revocation as may have existed were either abandoned or overlooked.

Because of the vague and unsatisfactory record before us, it is our view that proceedings for revocation should be remanded to the district court so that if the state wishes it may present evidence bearing upon the alleged misconduct of defendant after his return to the state. The proceedings for this purpose are summary since the provisions of the statute do not contemplate a formal trial. If it develops at such hearing that defendant has violated the conditions of his probation or has otherwise been "guilty of misconduct which warrants the imposing or execution of sentence," as provided by § 609.14, subd. 1, the trial court may employ alternative dispositions, provided for by § 609.14, subd. 3(2). If, on the other hand, none of the alleged grounds for revocation are found to exist, § 609.14, subd. 4, provides that "the defendant shall be restored to his liberty * * *." The sufficiency of the evidence in a proceeding to revoke probation is a matter within the sound discretion of the trial court, and its action will be reversed only upon a clear showing of abuse of that discretion. 21 Am. Jur. (2d) Criminal Law, § 568.

Remanded to the sentencing court for further proceedings.