**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1077**

Ricky James Bedell,
petitioner,

Appellant,

vs.

Tom Roy,
Commissioner of Corrections,

Respondent.

**Filed September 15, 2014
Reversed and remanded
Cleary, Chief Judge**

Rice County District Court
File No. 66-CV-14-551

Bradford Colbert, Mackenzie Moy (certified student attorney), Legal Assistance to Minnesota Prisoners, St. Paul, Minnesota (for appellant)

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Cleary, Chief Judge; Kirk, Judge; and Smith, Judge.

**S Y L L A B U S**

A prison inmate's Fifth Amendment right against compelled self-incrimination is violated when he is required, as a condition of participation in a prison-based chemical-dependency-treatment program, to discuss a conviction offense that is on appeal.

**O P I N I O N**

**CLEARY**, Chief Judge

In this expedited appeal, appellant challenges the district court's order denying his petition for a writ of habeas corpus. Because we conclude that appellant had a Fifth Amendment right to refuse chemical-dependency-treatment based on the information he was provided, we reverse and remand for recalculation of appellant's supervised release date.

**FACTS**

Petitioner-appellant Ricky James Bedell was convicted of aiding and abetting third-degree assault after a jury trial in Chisago County. He was sentenced to 29 months in prison, and filed a timely appeal challenging his conviction on November 14, 2013.

On October 21, 2013, before his notice of appeal was filed, appellant was interviewed by Captain Jason Starkson at MCF-Faribault for placement in the New Dimensions chemical-dependency-treatment program. Appellant refused to sign the pre-entry agreement, and he was charged with a discipline violation for refusing treatment.[1] According to the hearing officer's findings, Captain Starkson testified at the November 20, 2013 discipline hearing that "he interviewed [appellant] for possible placement in treatment and he refused, stating he did not want to sign any forms because of a pending appeal." The hearing officer also found that appellant "asked Cpt. Starkson

---

[1] Although appellant's refusal to sign the pre-entry agreement precedes the date the notice of appeal was filed, this is not significant because "a convicted individual can claim the privilege against self-incrimination as long as a direct appeal of that conviction is pending, or as long as the time for direct appeal of that conviction has not expired." *Johnson v. Fabian*, 735 N.W.2d 295, 310 (Minn. 2007).

if he would be required to talk about his current offense in treatment, [and] Starkson said he would." Appellant stated "he is not refusing treatment, but will not talk about his commitment offense" while his appeal is pending. The hearing officer deemed this a refusal to participate in treatment because appellant "would not sign the admission form" and imposed 45 days of extended incarceration. Appellant filed an appeal of this disposition with the warden, who affirmed the hearing officer's decision.

On March 12, 2014, appellant filed a petition for a writ of habeas corpus in Rice County District Court in which he claimed that he refused to participate in the New Dimensions chemical-dependency-treatment program at MCF-Faribault because he would have been required to "admit and discuss" his conviction offense, and that he has a Fifth Amendment right not to incriminate himself while his appeal from that conviction is pending. In support of the petition, appellant submitted an affidavit in which he states that on October 31, 2013, he told Captain Starkson he could not enter New Dimensions "until his appeal has been finalized." Appellant also states that at the discipline hearing, Starkson testified that the New Dimensions program requires participants to discuss their conviction offense. The Commissioner of Corrections' return included an affidavit from New Dimensions' program director Nancy Charlebois, who avers that information revealed during treatment is confidential, "unless it is a sex offense involving minors or vulnerable adults." Charlebois also states that appellant would have been questioned about his current offense and how chemical abuse contributed to the conviction, but that he would not have been terminated from the program if he refused to answer these questions and that any information he revealed would have remained confidential.

However, the Confidential Notice from the Chemical Dependency Client Bill of Rights states, "Clients of the MN Department of Corrections Chemical Dependency Programming are encouraged to disclose past criminal behavior. Clients should realize, however, that there are limits to client confidentiality . . . ." Based on Charlebois's affidavit, the commissioner argued that appellant does not have a Fifth Amendment claim to pursue, "because the information sought during chemical dependency treatment is not incriminating."[2] The district court denied appellant's petition without an evidentiary hearing, concluding that appellant's Fifth Amendment rights were not violated because *Johnson v. Fabian*, 735 N.W.2d 295 (Minn. 2007), does not apply to chemical-dependency-treatment programs; information disclosed in chemical-dependency treatment is protected by federal and state privacy laws; and appellant presented no evidence that he would have been required to discuss his conviction offense in order to participate in the program. This appeal followed.

## ISSUE

Does the record reasonably support the district court's conclusion that appellant failed to present evidence showing that he would have been required to discuss his

---

[2] The commissioner's return also asked the district court to dismiss the petition on the grounds that the district court did not have jurisdiction to consider appellant's petition because appellant was no longer residing in Rice County, having been moved from MCF-Faribault to MCF-Stillwater, in Washington County, after he filed his habeas petition. The district court declined to dismiss the petition for lack of jurisdiction, analyzing the issue as involving venue, and determining that the petition was properly filed while appellant was incarcerated in Rice County. This issue was not pursued as part of this appeal.

conviction offense in order to participate in a prison chemical-dependency-treatment program?

## ANALYSIS

The state constitution guarantees the privilege of filing a writ of habeas corpus. Minn. Const. art. I, § 7. The legislature has codified this right, expressly permitting individuals who are "imprisoned or otherwise restrained of liberty" to seek "relief from imprisonment or restraint" by applying for a writ of habeas corpus. Minn. Stat. § 589.01 (2012). But habeas relief is limited to constitutional violations or jurisdictional defects. *See Beaulieu v. Minn. Dep't. of Human Servs.*, 798 N.W.2d 542, 546 (Minn. App. 2011), *aff'd on other grounds*, 825 N.W.2d 716 (Minn. 2013). "The burden is on the petitioner to show the illegality of his detention." *Case v. Pung*, 413 N.W.2d 261, 262 (Minn. App. 1987), *review denied* (Minn. Nov. 24, 1987). On review, "[t]he district court's findings in support of a denial of a petition for a writ of habeas corpus are entitled to great weight and will be upheld if reasonably supported by the evidence." *Aziz v. Fabian*, 791 N.W.2d 567, 569 (Minn. App. 2010). Questions of law, however, are subject to de novo review. *Id.*

Appellant argues the commissioner violated his Fifth Amendment right against compelled self-incrimination by extending his incarceration based on his refusal to sign the pre-entry agreement for New Dimensions. The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V; *see also* Minn. Const. art. I, § 7. "The privilege allows an individual to refuse to 'answer official questions put to him in any other proceeding, civil or criminal,

5

formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Johnson*, 735 N.W.2d at 299 (Minn. 2007) (quoting *Minnesota v. Murphy*, 465 U.S. 420, 426, 104 S. Ct. 1136, 1141 (1984) (other citation omitted)). The Fifth Amendment does not prohibit all self-incriminating testimony, only that obtained by compulsion. *Id.* at 300 (citations omitted).

In *Johnson*, the supreme court considered whether the Fifth Amendment privilege against self-incrimination was violated by extending an inmate's period of incarceration as a sanction for refusing to admit or discuss the inmate's crimes in a sex-offender-treatment program. *Id.* at 297. First, the supreme court held that, because an inmate has a liberty interest in his supervised-release date, an extension of supervised release for a discipline violation for refusing to admit sexual offenses in sex-offender treatment rises to the level of compulsion. *Id.* at 309. Second, "[c]ompulsion does not violate the Fifth Amendment privilege against self-incrimination unless the information the claimant would be compelled to divulge is incriminating." *Id.* But the risk of self-incrimination must be "substantial and real." *Id.* Applying this test, the supreme court held that an inmate who has a pending direct appeal of a conviction may claim the privilege against self-incrimination. *Id.* at 309-10. Once the appeal is exhausted, the privilege applies only if the inmate testified at trial and denied that a crime occurred because the inmate would have a "real" fear of a perjury prosecution. *Id.* at 311.

Appellant asserts that the principle established in *Johnson* "applies to all prison-based treatment programs," but does not cite any authority for this broad interpretation. The commissioner, on the other hand, interprets *Johnson* narrowly as applying only to

prison-based sex-offender-treatment programs, and only when an inmate refuses to admit the conviction offense while a direct appeal is pending, or while the time for direct appeal has not expired. The issue before the supreme court in *Johnson* was whether the prison-based sex-offender-treatment program's requirement that inmates admit or discuss their conviction offenses or face disciplinary sanctions violated their Fifth Amendment rights. *Id.* at 298. The supreme court did not consider whether a prison-based chemical-dependency-treatment program that requires inmates to admit or discuss their crimes could violate the Fifth Amendment. But this court has considered this issue.

When *Johnson* was pending in the court of appeals, the issues included whether participation in the TRIAD chemical-dependency-treatment program violated Johnson's Fifth Amendment rights. *Johnson v. Fabian*, 711 N.W.2d 540, 542-43 (Minn. App. 2006). The district court made findings based on the affidavit of the TRIAD program director that TRIAD does not require inmates to discuss offenses currently on appeal, and if inmates refuse to talk about their offenses, "staff accept that response and continue to treat the offender." *Id.* No offender faced termination from the program for refusing to discuss the conviction offense. *Id.* at 543. Relying on the district court's findings, this court held that the TRIAD program did not require Johnson to incriminate himself while his conviction offense was on appeal. *Id.* Accordingly, this court held that Johnson had not demonstrated that extended incarceration based on refusal to participate in the TRIAD chemical-dependency-treatment program violated his Fifth Amendment rights. *Id.* at 545.

The record in *Johnson* confirmed that the TRIAD chemical-dependency-treatment program does not compel inmates to discuss their conviction offenses or face consequences of extended incarceration. But *Johnson* cannot be read to hold that requiring an inmate to participate in a chemical-dependency-treatment program while his conviction offense is on appeal or while the time for direct appeal has not expired can never violate the Fifth Amendment. At oral argument in this case, the commissioner's counsel argued that the New Dimensions chemical-dependency-treatment program is no different from TRIAD and does not require inmates to discuss their conviction offenses. Presumably this is based on the affidavit from the program director that was included in the commissioner's return. But counsel also acknowledged at oral argument that if the record supported appellant's contention that he was told the New Dimensions program would require him to discuss his conviction offense, it "could be a different case." Based on our review of the record here, we are not persuaded that it supports the commissioner's contention that the New Dimensions program operates in the same manner as TRIAD, or that the record mandates the same result that this court reached in *Johnson*, 711 N.W.2d at 545.

In support of his petition for a writ of habeas corpus, appellant submitted an affidavit that included his version of what Captain Starkson told him: "the New Dimension[s] CD treatment program required its participants to admit and discuss their crimes of commit." The record also included the hearing officer's findings, based on Captain Starkson's testimony at the discipline hearing, that appellant "asked Cpt. Starkson if he would be required to talk about his current offense in treatment, [and]

8

Starkson said he would." Further, the program information packet that is included in appellant's addendum confirms that inmates enrolled in the New Dimensions chemical-dependency-treatment program are expected to talk about their criminal history; does not appear to exempt discussion regarding offenses that are on appeal or for which the appeal period has not expired from this requirement; and advises inmates to be aware of limits on confidentiality. The only evidence that appellant would not have been required to "answer questions specific to his assault conviction" and "would not have been terminated from the program" for refusing to answer is contained in the program director's affidavit. But appellant did not have that information when he refused to sign the pre-entry agreement. And the program director's affidavit was not submitted at the discipline hearing. The record, therefore, supports appellant's contention that he refused to sign the pre-entry agreement because he understood that the New Dimensions program would require him to discuss his conviction offense. *See Carrillo v. Fabian*, 701 N.W.2d 763, 775-76 (Minn. 2005) (concluding that "some evidence" is the appropriate standard for judicial review of actions of prison authorities). Because appellant was appealing his conviction offense, we are persuaded that appellant had a Fifth Amendment right to refuse treatment based on the information he was given that participation in the New Dimensions program would create a substantial and real risk of compelled self-incrimination.

Finally, appellant argues that the district court erred in denying his petition for a writ of habeas corpus without an evidentiary hearing where there was a factual dispute. Because we are reversing the district court's order denying appellant's petition for a writ

of habeas corpus, it is unnecessary to address the question of whether the district court should have granted an evidentiary hearing.

## DECISION

The 45 days extended incarceration imposed as a sanction for appellant's refusal to sign the pre-entry agreement for the New Dimensions chemical-dependency-treatment program violated appellant's Fifth Amendment rights against compelled self-incrimination. The matter is reversed and remanded for recalculation of appellant's supervised release date.

**Reversed and remanded.**