**STATE of Minnesota, Appellant,**

v.

**John Milton WILLIAMS, Respondent.**

No. C0-87-619.

Court of Appeals of Minnesota.

July 28, 1987.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for appellant.

William E. Falvey, Ramsey County Public Defender, Daniel A. Klas, Asst. County Public Defender, Joan A. Hill-McClain, Certified Student Atty., St. Paul, for respondent.

Considered and decided by HUSPENI, P.J., and WOZNIAK and CRIPPEN, JJ., with oral argument waived.

## OPINION

WOZNIAK, Judge.

The State appeals a pretrial ruling that a search pursuant to an arrest warrant was unreasonable under the fourth amendment. We affirm.

### FACTS

On December 16, 1986, two Ramsey County Sheriff's deputies went to the Quality Inn in St. Paul to execute an arrest warrant for Richard Charles Hayes. Hayes was being sought for uttering a forged instrument in violation of his probation. The deputies were informed that Hayes was staying at the hotel under the name of John Lebeau.

At the hotel, the desk clerk identified a photograph of Hayes as John Lebeau, a registered guest. The clerk showed them a check that Hayes had made out to the hotel using the name John Lebeau. The clerk told the deputies Lebeau had been registered there a few days but had not stayed there the night before. The deputies were also informed the room still contained his belongings, and that he was "locked out" of his room and would have to pay his bill before claiming his belongings.

The deputies had information that Hayes was planning to leave town and had an airline ticket to California. They asked the desk clerk if they could go through his room to determine that it was definitely Hayes staying there and "to see if we could possibly find an airline ticket so we could find out how we could arrest this party."

A maintenance man led the deputies to the second floor and unlocked room 226. No one was in the room. The deputies immediately began searching the bureau drawers and clothes which were hanging behind the door. They found a large amount of money and a bag of white powder and pills in the clothes.

As they were searching, a cleaning lady interrupted them and informed the officers they were searching the wrong room as Lebeau was in room 206. The deputies put everything back and left room 226.

The officers obtained a description of the occupant of room 226, respondent John Milton Williams, and notified the narcotics division. While a search warrant application was pending, the deputies staked out room 226. A search warrant was then issued. Based on the evidence obtained from the execution of the search warrant, Williams was charged with possession of cocaine with intent to distribute.

At the conclusion of the omnibus hearing, the trial court found that the deputies made a good faith mistake in going to the wrong room but suppressed the evidence as seized in violation of Williams' fourth amendment rights. The trial court determined there was no basis for the deputies to enter and search clothing in room 226. The court stated that the only purpose in continuing to search the room after confirming that Hayes was not present was to search for contraband. The court noted the deputies easily could have obtained a search warrant to search the room. The court suppressed the evidence seized from room 226.

### ISSUE

Did the trial court clearly err in ruling that the police, armed with an arrest warrant, may not search clothing believed to be the suspect's?

### ANALYSIS

In a pretrial appeal, we will reverse the determination of the trial court only if the State demonstrates clearly and unequivocally, first, that the trial court erred in its judgment, and second, that unless reversed, the error will have a critical impact on the outcome of the trial. *State v. Kim,* 398 N.W.2d 544, 547 (Minn.1987). We have no doubt that the trial court's suppression order seriously impedes continuation of the prosecution and thus the issue on appeal is whether the trial court clearly erred in its ruling.

The fourth amendment protects hotel guests from unreasonable searches and seizures. *State v. Hatton,* 389 N.W.2d 229, 232 (Minn.Ct.App.1986).

■ The arrest warrant justified the limited entry into room 226 to determine possible locations where the arrestee could conceal himself. *State v. Lasley*, 306 Minn. 224, 233, 236 N.W.2d 604, 609–10 (1975), *cert. denied*, 429 U.S. 1077, 97 S.Ct. 820, 50 L.Ed.2d 796 (1977); 2 W. LaFave, *Search & Seizure* §§ 6.1(a), 6.3(a) (2d ed. 1987). The police officers were not required to rely on the hotel manager who told them that Hayes/Lebeau was not in his room. A valid arrest warrant implicitly grants police the limited authority to enter a suspect's residence "when there is reason to believe the suspect is within." *Payton v. New York*, 445 U.S. 573, 603, 100 S.Ct. 1371, 1388, 63 L.Ed.2d 639 (1980). The officers acted reasonably in seeking admission into Hayes/Lebeau's room to determine if he was present.

Once the deputies determined that Hayes/Lebeau was not in room 226, however, what justification was there to search through the furniture and clothing in the room without a search warrant? Clearly the items found were not in plain view.

■ Under traditional definitions of "searches," the exploratory investigation of respondent's clothing was a search. *See* 79 C.J.S. *Search and Seizure* § 1 n. 12.5 (1952 & Supp.1986). Searches and seizures inside a home without a warrant are presumptively unreasonable. *Payton*, 445 U.S. at 586, 100 S.Ct. at 1380. An arrest warrant does not justify the routine search of a room through dresser drawers or through items of clothing. These searches, in the absence of well-recognized exceptions (consent, emergency, or incident to arrest), may be made only under the authority of a search warrant. An arrest warrant is a judicial process by which, in the name of the State, a defendant is brought before the court to answer a criminal charge. *City of St. Paul v. Tobler*, 278 Minn. 269, 270, 153 N.W.2d 440, 441 (1967); Minn.R.Crim.P. 4.01. The State contends that this court should create another exception to the warrant requirement for searches made to locate a suspect in order to effectuate an arrest under an arrest warrant by verifying a suspect's identification or determining a possible avenue of flight. We decline to create this new exception.

The State also argues that no purpose is served by requiring the deputies to obtain a search warrant to search room 226. Without citing any authority, the State argues this, in effect, would create a "new warrant." We disagree. The officers should have obtained an "old warrant," namely a search warrant. The State additionally argues that a search to find evidence where a suspect may be arrested is not really an intrusion requiring a search warrant because it is not a search to discover evidence of his guilt. This distinction is not recognized by law. *E.g.*, *Warden v. Hayden*, 387 U.S. 294, 301, 87 S.Ct. 1642, 1647, 18 L.Ed.2d 782 (1967) (Court abandoned the "mere evidence" rule, finding no distinction between mere evidence and instrumentalities, fruits of crime, or contraband.) Besides, had the police discovered a plane ticket in room 226, it would undoubtedly have been admissible evidence against Hayes as evidence of consciousness of guilt.

The State's contention that it was "not reasonable or effective to put a stake-out at the room in case the suspect should return" flies in the face of the actual events. Indeed, a stake-out was conducted while a search warrant was obtained, but after the deputies found evidence of narcotics in the room. It is unclear why it was reasonable to use a stake-out at this time, but not earlier when the officers wanted to search the room.

In *State v. Loftin*, 276 S.C. 48, 275 S.E.2d 575 (1981), the police entered the defendant's apartment armed with an arrest warrant during defendant's absence. A resulting search revealed a police jacket believed stolen and, upon verification, police returned with a search warrant and found incriminating evidence. The South Carolina Supreme Court found this evidence was inadmissible because there were no facts from which the officers could have reasonably believed the defendant was in his apartment and hence they had no justification for even entering.

In *United States v. Goldenstein,* 456 F.2d 1006 (8th Cir.1972), *cert. denied sub nom. Ray v. United States,* 416 U.S. 943, 94 S.Ct. 1951, 40 L.Ed.2d 295 (1974), the court held that, where an officer entered a hotel room without a warrant in search of a registered guest who allegedly had shot another guest in the hotel minutes before and had been wounded himself, it was the officer's duty after determining no one was present to make no further search. The court suppressed evidence of money found in a sealed suitcase.

The present case is not analogous to cases where the police officer made a good faith mistake while executing a search warrant, *Maryland v. Garrison,* — U.S. —, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); or where the police had a reasonable basis for suspecting that defendant was a person for whom probable cause existed to arrest, *State v. Sanders,* 339 N.W.2d 557 (Minn. 1983); or where the police made a good faith mistake in reliance on a statute, *Illinois v. Krull,* — U.S. —, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987); or where the police made a good faith mistake in arresting the wrong person, *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971). This case involves a search pursuant to an arrest warrant. This case is further distinguishable because, even if the deputies were not mistaken, the search was unreasonable.

The State apparently concedes that if the initial search of room 226 was invalid, the subsequent search warrant was tainted; and, under principles of *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the resulting evidence must be suppressed.

## DECISION

The trial court did not clearly err in ruling that police officers lacked justification for conducting an exploratory search of the hotel room when armed with a valid arrest warrant. Despite the police officers' good faith in mistakenly entering the wrong room, they had no authority to search the room, even ostensibly to verify identification of the fugitive or to determine if the fugitive had an airline ticket and was preparing to flee the state.

Affirmed.